UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZSCAQULINE C. MASERANG,<br><br>                        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                        Defendant. | Case No.: 16cv2098-BAS-MDD<br><br>**REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 16, 19]** |

      Plaintiff Zscaquline C. Maserang ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability benefits under Title II of the Social Security Act and supplemental security income payments under Title XVI of the Social Security Act. Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits, or, in the alternative, to remand the case for further administrative proceedings. (ECF No. 16). Defendant moved for summary judgment affirming the denial of benefits. (ECF No. 19).

For the reasons expressed herein, the Court recommends that the case be **REMANDED** to the ALJ for further proceedings.

# I. BACKGROUND

Plaintiff alleges that she became disabled on May 17, 2011. (A.R. 176, 182).[1] Plaintiff's date of birth, November 2, 1973, categorizes her as a younger person on the alleged disability onset date. 20 C.F.R. §§ 404.1563, 416.963; (A.R. 28).

## A. Procedural History

On January 17, 2013, Plaintiff filed an application for social security disability insurance benefits, and on January 31, 2013, Plaintiff filed an application for supplemental security income. (A.R. 21). Plaintiff had previously filed for disability insurance benefits and supplementary security income on November 5, 2008. (A.R. 62). Administrative Law Judge ("ALJ") David L. Wurzel denied those claims on May 16, 2011. (A.R. 59-73). On December 13, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 78).

Plaintiff's January 2013 claims were initially denied on May 17, 2013, and denied upon reconsideration on October 3, 2013. (*Id.*). On September 19, 2014, Plaintiff appeared at a hearing in San Diego, California, before ALJ Jay Levine. (A.R. 36). Plaintiff and impartial vocational expert Harlan S. Stock testified. (A.R. 21).

On January 14, 2015, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 21, 29). Plaintiff appealed, and the Appeals Council declined to review the ALJ's decision. (A.R. 1). Consequently, the ALJ's

---

[1] "A.R." refers to the Administrative Record filed on November 21, 2016, and is located at ECF No. 11.

decision became the final decision of the Commissioner. (*Id.*).

On August 18, 2016, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision. (ECF No. 1). On November 21, 2016, Defendant answered and lodged the administrative record with the Court. (ECF Nos. 10, 11). On April 17, 2017, Plaintiff moved for summary judgment. (ECF No. 16). On May 16, 2017, the Commissioner cross-moved for summary judgment. (ECF No. 19). Plaintiff did not reply to the Commissioner's response.

## II. DISCUSSION

### A. Legal Standard

The supplemental security income program provides benefits to disabled persons without substantial resources and with little income. 42 U.S.C. § 1382. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner makes this assessment through a process of up to five steps. First, the claimant must not be engaged in substantial, gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded. *Id.* If the claimant's

impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity. At the fourth step, the claimant's relevant work history is considered with the claimant's residual functional capacity. If the claimant can perform the claimant's past relevant work, benefits are denied. 20 C.F.R. § 416.920(e). At the fifth step, if the claimant is found unable to perform the claimant's past relevant work, the issue is whether the claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. If the claimant cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f).

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational

interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself [or herself] about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S. C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

**B. The ALJ's Decision**

The ALJ concluded Plaintiff was not disabled, as defined in the Social Security Act, from May 17, 2011, through the date of the ALJ's decision, January 14, 2015. (A.R. 29). The ALJ also found Plaintiff did not show changed circumstances sufficient to overcome the presumption of nondisability from the previous ALJ decision on May 16, 2011. (A.R. 22).

The ALJ found Plaintiff has the following severe impairments:

polyarthralgia; arthritis; chondromalacia patellar, bilateral knees; fibromyalgia; obesity; degenerative disc disease ("DDD") and joint disease, lumbar and cervical spine; and hypertension. (A.R. 24). The ALJ determined that Plaintiff did not have an impairment or combination of impairments meeting or medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (A.R. 25). Specifically, the ALJ found that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments." (*Id.*). The ALJ considered listings 1.02, 1.03, 1.04, 4.00 and 14.09.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work . . . except [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; [Plaintiff] can stand and/or walk 2 hours in an 8-hour workday, in ½ hour intervals; [Plaintiff] can sit 6 hours in an 8-hour workday; [Plaintiff] cannot push and/or pull with either leg; [Plaintiff] cannot work around unprotected heights, temperature extremes, and vibration; [Plaintiff] cannot walk on uneven ground; [Plaintiff] cannot climb ladders, but she can occasionally climb stairs and ramps; [Plaintiff] can occasionally stoop and bend; [Plaintiff] cannot balance; [Plaintiff] can perform frequent handling and fine fingering; [Plaintiff] cannot perform power gripping and/or grasping with either hand; and [Plaintiff] can occasionally lift above shoulder level.

(A.R. 25). After reviewing the record and Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements

6

16cv2098-BAS-MDD

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (A.R. 26).

Relying on the record and testimony of vocational expert (VE) Harlan S. Stock, the ALJ found that Plaintiff is unable to perform any past relevant work. (A.R. 28). The ALJ stated that the record reflects that Plaintiff worked as a preschool teacher. (*Id.*). VE Stock testified that this position requires an exertional level that Plaintiff could not perform at her current functional capacity. (A.R. 55).

The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 28). In determining this, the ALJ considered Plaintiff's RFC; that Plaintiff has a Master's degree in human services, can communicate in English, and is a "younger individual;" and that transferable job skills are immaterial. (A.R. 26, 28). Based on this information, VE Stock testified that Plaintiff can perform occupations such as dresser, election clerk, and call out operator. (A.R. 29). Accordingly, the ALJ found Plaintiff was not disabled from May 17, 2011, to the date of the ALJ decision, January 14, 2015. (A.R. 29-30).

In determining that Plaintiff is not disabled, the ALJ noted the following to be of particular relevance:

### 1. **Plaintiff's Testimony**

At the hearing, Plaintiff testified that she was divorced with three children, ages 19, 21, and 8. (A.R. 26). Plaintiff lived with her 8-year-old daughter. (*Id.*). Plaintiff testified that she was hospitalized due to rheumatoid arthritis and swelling in her legs, and also complained of worsening back and joint pain. (*Id.*). For insurance reasons, Plaintiff was unable to get an MRI. (*Id.*).

Plaintiff testified that she could not work because it was difficult to

stand on her feet, and she had difficulties with daily activities like washing her hair and walking around her complex. (*Id.*). She complained of extreme joint pain and swelling and numbness in her knees and legs. (*Id.*). Plaintiff mostly tried to walk without a cane, but sometimes used one. (*Id.*).

The ALJ found that Plaintiff's allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence of record. (A.R. 27).

### 2. Plaintiff's 2011-2014 Medical Record

On August 8, 2011, Plaintiff attended a rheumatology consultation with Michael Keller, M.D. (A.R. 299-301). Dr. Keller evaluated Plaintiff and diagnosed her with degenerative disease, osteoarthritis polyfocal, and fibromyalgia. (A.R. 301). Plaintiff had negative Antinuclear Antibody[2] ("ANA") testing, which resulted in no diagnosis of rheumatoid arthritis. Dr. Keller gave Plaintiff a trial of Lyrica and advised her on the importance of diet and exercise. (*Id.*).

On August 31, 2012, Plaintiff complained of generalized myalgia and arthralgia to King Chavez Health Center. (A.R. 318, 336). Plaintiff also reported at that time that her rheumatologist felt Plaintiff had rheumatoid arthritis. (A.R. 318).

On January 28, 2013, Plaintiff's cervical spine x-ray indicated she had mild DDD at C6-7 without abnormal motion. (A.R. 371). On March 3, 2013, Plaintiff's screening for rheumatoid arthritis showed elevated inflammatory markers, but her ANA was negative. (A.R. 357). Plaintiff was diagnosed

---

[2] ANA testing assists in screening for autoimmune disorders. *Whitendale v. Astrue*, No. 1:10-cv-01561-SKO, 2012 WL 652646, at *1 n.6 (E.D. Cal. Feb. 28, 2012) (citing to https://medlineplus.gov/ency/article/003535.htm).

8

with "likely" rheumatoid arthritis, unspecified myalgias and myositis, unspecified generalized osteoarthritis, Raynaud's syndrome, and mild degenerative joint disease in the cervical spine. (*Id.*). Plaintiff evidenced inflammation in her joints and skin with elevated inflammation markers, but negative serologies. (*Id.*). On August 14, 2013, Dr. Roshan, a treating physician, indicated that Plaintiff continued to have inflammatory arthritis with elevated inflammatory markers, but that her ANA by immunofluorescence was negative. (A.R. 392). Plaintiff had less swelling in her hands, but still had significant pain in her joints and had prolonged morning stiffness. (*Id.*). Dr. Roshan treated Plaintiff with Methotrexate, authorized her to try Humira, and advised Plaintiff to lose weight. (*Id.*).

On May 16, 2014, Dr. Roshan reported that Plaintiff' continued to have inflammatory arthritis, fibromyalgia, and connective tissue condition, which were treated with Methotrexate and shoulder injections. (A.R. 401). Dr. Roshan treated Plaintiff's cervical stenosis with Gabapentin, treated her fatigue with folate and B12, and counseled Plaintiff on weight loss and exercise. (*Id.*).

### 3. Dr. Close, Consultative Examiner

The ALJ gave great weight to consultative examiner Frederick Close, M.D., a Board certified orthopedic surgeon, and found his opinion consistent with the objective record. (A.R. 27-28). Dr. Close evaluated Plaintiff on April 30, 2013, and found that she was not precluded from performing less than light exertional capacity. (A.R. 378-381). Dr. Close reported that Plaintiff was 39 years old with a workers' compensation injury four years earlier, when a chair was pulled out from under her, causing pain in her joints and back. (A.R. 378). Plaintiff continued to have rheumatoid disease after her workers' compensation claim closed. (*Id.*).

Dr. Close's physical examination determined that Plaintiff had polyarthralgia, rheumatoid arthritis, and chondromalacia patellae knees, bilateral. (A.R. 380). He found that Plaintiff stood and walked with a normal gait and used a cane for balance; had crepitus in both knees; had a negative McMurray test[3] and negative straight leg raise test; had generalized tenderness in the rotator cuff bilaterally and wrists; and had a negative Finkelstein test.[4] (A.R. 379).

Dr. Close opined that Plaintiff "was able to lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for four hours with normal rest breaks; sit for six hours with normal rest breaks; use a cane for balance and avoid uneven terrain and long-distance walking; frequently bend, stoop, and crouch; and frequently reach, handle, feel, grasp, and finger." (A.R. 381).

### 4. Drs. Taylor-Holmes and Kalmar, State Agency Reviewers

The ALJ gave less weight to State agency reviewers Dr. Taylor-Holmes and Dr. Kalmar, who reviewed the record and determined Plaintiff was functionally limited to sedentary work. (A.R. 28, 85-97, 113-125). The ALJ noted that Plaintiff's treatment records indicated that Plaintiff had rheumatoid arthritis, but negative ANA testing, and an x-ray of Plaintiff's

---

[3] A McMurray test is a "rotation of the tibia on the femur to determine injury to meniscal structures. . . . A positive test indicates meniscal injury." *Rodriguez v. Astrue*, No. 12-CV-4103, 2013 WL 1282363, at *7 n.45 (E.D. N.Y. Mar. 28, 2013) (internal citations and quotations omitted).

[4] The Finkelstein test is used by physicians to confirm de Quervain's tenosynovitis, which is a painful condition affecting the tendons on the thumb side of the wrist. "The thumb is bent down along the palm and then covered with the other fingers." *Herring v. Colvin*, No. 3:13-CV-00004, 2014 WL 1052078, at *7 n.20 (M.D. Pa. Mar. 18, 2014) (internal citations omitted).

cervical spine showed only mild degeneration. (*Id.*). Accordingly, the ALJ found that Plaintiff had a significant range of light residual functional capacity assessment and was not limited to sedentary work. (*See id.*).

### C. Issues

#### 1. Credibility of Plaintiff's Testimony

Plaintiff's sole argument on appeal is that the ALJ failed to articulate sufficient reasons to find Plaintiff not credible. (ECF No. 16-1 at 4). Specifically, Plaintiff argues that the ALJ erred in using boilerplate language to discredit her testimony, and in rejecting her testimony based on a lack of objective evidence, which Plaintiff argues is always legally insufficient. (*Id.* at 6-7). Conversely, Defendant argues that the ALJ offered substantial evidence in finding Plaintiff not entirely credible. (ECF No. 19-1 at 3).

Plaintiff's allegation of error will not be examined here. As discussed below, the Court finds that the ALJ improperly applied the res judicata presumption of continuing nondisability to his standard of review in this case. This constituted clear error.

#### 2. *Res Judicata* Presumption of Nondisability

As noted herein, Plaintiff previously applied and was denied disability benefits. (A.R. 21). Specifically, on May 16, 2011, ALJ David Wurzel ruled that Plaintiff had not "been under a disability… from October 21, 2008, through the date of [his] decision." (A.R. 73).

Ruling on the instant (second) application for disability benefits, on January 14, 2015, ALJ Jay Levine found that Plaintiff had not "been under a disability…from May 17, 2011 through the date of [his] decision." (A.R. 29). In his decision, ALJ Levine noted that "the documentary evidence reflects the claimant filed prior applications for Title II and Title XVI benefits…which were denied at the initial level on December 18, 2008 and affirmed on May

16, 2011, following a review and hearing conducted by ALJ Wurzel. (A.R. 21). ALJ Levine cited to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) for the proposition that "[t]he principles of res judicata apply to administrative decisions. . . ." *Id.* at 693. He also cited to *Lyle v. Secretary of Health and Human Services*, 700 F.2d 566 (9th Cir. 1983) for the proposition that "a prior decision, which finds a claimant capable of a certain residual functional capacity, creates a presumption that the claimant continues to be able to do work at that level unless evidence is presented to overcome this presumption." (A.R. 21). Lastly, ALJ Levine acknowledged that for a claimant to overcome the presumption of continuing nondisability a claimant must prove 'changed circumstances' indicating a greater disability, an increase in severity of her impairments or the existence of an impairment not previously considered. (A.R. 21-22). *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985); AR 97-4(9); 20 C.F.R. 404.1563; 20 C.F.R. 416.963.

After citing the applicable legal standard, ALJ Levine subsequently concluded:

> In this case, the claimant has not provided any persuasive evidence of significant "changed circumstances" that would warrant a more restricted residual functional capacity than that described [herein]. In fact, the evidence indicates that claimant is capable of performing less than light exertional capacity. As such, [I find] the claimant has not rebutted the presumption of continuing nondisability.

(A.R. 22). From that conclusion, ALJ Levine proceeded to rule upon Plaintiff's second application.

"Normally, an ALJ's findings that a claimant is not disabled 'creates a presumption that the claimant continued to be able to work after that date.'" *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009) (quoting *Lester v. Chater*,

81 F.3d, 821, 827 (9th Cir. 1995)). "[T]he principles of res judicata apply to administrative decisions," but, "the doctrine is applied less rigidly to administrative proceedings. . . ." *Id.* Consequently, when a claimant files a second (or subsequent) claim for benefits, the ALJ deciding the subsequent application is required to consider the res judicata effect to be accorded to the prior unfavorable decision. *Lester v. Chater*, 81 F.3d, 821, 827 (9th Cir. 1995). Notably, "[t]he presumption [never] applies, if there are changed circumstances." *Id.* (citations omitted.) Changed circumstances that can bar the application of res judicata specifically include a new issue raised by the Plaintiff "such as the existence of an impairment not considered in the previous application." *Id.* (citations omitted).

In Plaintiff's first application (2011) ALJ Wurtzel specifically found:

> I find that the claimant has the following medically determinable impairments that in combination are considered severe under the Social Security Act and regulations: Degenerative disc disease, cervical spine, with significant disc-spur complex at C6-C7; degenerative disc and joint disease, lumbar spine, with disc-spur complex at L4-L5; hypertension, well controlled; patellofemoral pain syndrome, both knees; and obesity.

(A.R. 64). ALJ Wurtzel's decision does not indicate that fibromyalgia was presented as a basis for Plaintiff's claim of disability in the first application or that he considered it in his findings. (A.R. 64).

In the application at issue here (2015) ALJ Levine found:

> The claimant has the following severe impairments: polyarthralgia; arthritis; chondromalacia patellar, bilateral knees; fibromyalgia; obesity; degenerative disc and joint disease, lumber and cervical spine; and hypertension.

(A.R. 24). Also, ALJ Levine specifically acknowledged Plaintiff's fibromyalgia impairment:

13

> The objective treatment records support she has a medically determinable and severe impairment of fibromyalgia, based on evidence showing widespread pain; at least 11 positive tender points on physical examination; repeated manifestations of six or more fibromyalgia symptoms; and a determination that other disorders could not cause these repeated manifestations of symptoms.

(A.R. 24).

The record shows that the earliest date Plaintiff was given a tentative diagnosis of fibromyalgia was following an exam by Dr. Soumya Rao, M.D. on August 8, 2011. (A.R. 301). The date of that exam was over four months after ALJ Wurzel issued his ruling on Plaintiff's first application on May 16, 2011. (A.R. 73). Thus, the Court finds that the record evidence demonstrates that Plaintiff's allegation of fibromyalgia constituted a "changed circumstance" because this impairment was not addressed in the 2011 decision. [5]

The Ninth Circuit has held that "the Commissioner may not apply res judicata where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). "[A]ll an applicant has to do to preclude the application of res judicata is raise a new issue in a later proceeding." *Vasquez v. Astrue*, 572 F.3d 586, 598 n. 9 (9th Cir. 2009). The newly asserted impairment need not be severe or disabling, res judicata is precluded based only upon the assertion of new impairments. *Id.* Because Plaintiff raised a new impairment not previously presented in her first application it was error for the ALJ to apply the presumption of continuing nondisability in ruling on Plaintiff's second application.

---

[5] : The Court was compelled to consider the issue of res judicata without input from either party as neither addressed it in their pleadings.

### 3. Remand for Further Administrative Proceedings Is Appropriate

The Court recognizes the importance of administrative res judicata, however when the doctrine is erroneously applied, remand is an appropriate remedy. "[A] court has discretion to remand for further proceedings when an ALJ has committed legal error in denying benefits." *Harman v Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Here the ALJ erred by applying the res judicata presumption of continuing nondisability to Plaintiff's first application and subsequent ruling. Based on the record evidence in the case, the principle of res judicata is not applicable. Plaintiff's second application for benefits was denied for her failure to overcome the presumption of continuing nondisability for the period following the denial of her first application. This presumption did not apply to Plaintiff because the record presented shows she alleged a new disability not contained in her first application for benefits.

In sum, the ALJ's application of the continuing presumption of nondisability arising from the prior ALJ's decision was error. When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 355, 154 L.Ed.2d 272 (2002) (citations and quotation marks omitted); *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir.2004). Accordingly, the Court recommends the case be remanded so the ALJ can determine Plaintiff's residual functional capacity and entitlement to disability benefits in the first instance.

### III. CONCLUSION

The Court **RECOMMENDS** that the case be **REMANDED** for further

proceedings and the ALJ be instructed not to apply the principle of the res judicata presumption of continuing nondisability. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all parties no later than **September 12, 2017**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 19, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 29, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge